PEOPLE v LONSBY

Docket No. 250559. Submitted December 7, 2004, at Detroit. Decided October 13, 2005, at 9:00 a.m. Leave to appeal sought.

Larry J. Lonsby was convicted by a jury in the St. Clair Circuit Court on one count of first-degree criminal sexual conduct and on two counts of second-degree criminal sexual conduct. The court, James P. Adair, J., had admitted testimony from a serologist from the Michigan State Police Crime Laboratory regarding tests on a stain on the defendant's garment, but the witness was not the one who performed the tests, wrote the lab notes, and authored the lab report that were the subject of the testimony. After the defendant's convictions, the United States Supreme Court in *Crawford v Washington*, 541 US 36 (2004), decided that, under the Confrontation Clause of the Sixth Amendment, testimonial hearsay is not admissible against a criminal defendant unless the declarant is unavailable to testify at trial and the defendant had the opportunity to cross-examine the declarant. The defendant moved for a new trial, arguing that, under *Crawford,* the testifying serologist's testimony was inadmissible and violated his Sixth Amendment right of confrontation. The court denied the motion. The defendant appealed.

The Court of Appeals *held*:

The convictions are reversed and the case is remanded for a new trial.

SAAD, J., stated that, under the rule announced in *Crawford,* the testimony about the nontestifying serologist's notes and lab report constituted testimonial hearsay and its admission violated the defendant's Sixth Amendment right of confrontation

Although an expert witness may rely on hearsay evidence when the witness formulates an opinion, the testimony of the serologist who testified was not offered as expert opinion on an aspect of the case, but as a means to introduce the nontestifying serologist's out-of-court statements in her lab notes and reports.

The testimony of the serologist who did not perform the tests or record the results was clearly hearsay, MRE 801(c), and no exceptions apply to render the testimony admissible.

*Crawford* applies retroactively to cases pending on direct review, such as this case, or those that are not yet final at the time *Crawford* was decided.

*Crawford* held that out-of-court statements that are testimonial are barred under the Confrontation Clause unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant. Included among testimonial statements are those that were made under circumstances that would lead an objective witness reasonably to believe that the statements would be available for use at a later trial. In this case, the nontestifying serologist's writings qualify as statements that reasonably would be expected to be used in a prosecutorial manner at trial, there was no showing that the nontestifying serologist was unavailable, and the defendant did not have a prior opportunity to cross-examine the nontestifying serologist.

Whether the standard of review is harmless beyond a reasonable doubt or plain error, the admission of the disputed testimony in violation of the defendant's Sixth Amendment right of confrontation requires a new trial.

Reversed and remanded for a new trial.

WHITBECK, C.J., concurred in the result only.

TALBOT, J., concurred in the result only.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Peter R. George*, Prosecuting Attorney, and *Timothy K. Morris*, Chief of Appeals, for the people.

*Matthew Posner* for the defendant.

Before: WHITBECK, C.J., and SAAD and TALBOT, JJ.

SAAD, J. A jury convicted defendant on one count of first-degree criminal sexual conduct (CSC I)[1] and two counts of second-degree criminal sexual conduct (CSC II).[2] The trial court sentenced defendant to 9 to 30 years in prison for the CSC I conviction and 9 to 15 years in

---

[1] MCL 750.520b(1)(a).

[2] MCL 750.520c(1)(a).

prison for each CSC II conviction. Defendant appeals his convictions and sentences, and we reverse and remand for a new trial.

## I. NATURE OF THE CASE

In *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the United States Supreme Court held that, to satisfy the Confrontation Clause of the Sixth Amendment,[3] it is no longer sufficient that "testimonial" hearsay meets traditional guarantees of reliability under state evidentiary rules. Instead, *Crawford* holds that testimonial hearsay is not admissible against a criminal defendant unless the declarant is unavailable to testify at trial and the defendant had the opportunity to cross-examine the declarant. *Id.* at 68.

*Crawford* left open for further development what hearsay statements are "testimonial." Yet, in addition to its recognition that prior trial testimony clearly constitutes testimonial hearsay, the Court stated that pretrial statements are testimonial if the declarant would reasonably expect that the statement will be used in a prosecutorial manner and if the statement is made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Id.* at 51-52.

Here, the victim testified that defendant sexually assaulted her and defendant denied the accusation. The only physical evidence that could tip the balance in this credibility contest is the pivotal question whether a stain on defendant's swim trunks was semen, as the victim alleged, or merely urine, as defendant alleged. Melinda Jackson, a serologist at the Michigan State Police Crime Laboratories (crime lab), tested the stain

---

[3] US Const, Am VI.

and recorded her observations and test results in laboratory notes and a lab report. Jackson did not appear as a witness at defendant's trial. Instead, the prosecutor called another serologist from the crime lab, David Woodford, and he testified about the contents of his colleague's written statements. Throughout the trial, the prosecutor urged the jury to conclude that the crime lab findings, as summarized by Woodford, proved the presence of semen and, thus, defendant's guilt.

For the reasons set forth in this opinion, we hold that under the guidelines articulated in *Crawford*, the non-testifying serologist's notes and lab report constitute testimonial hearsay and that the admission of these statements through Woodford's testimony violated defendant's rights under the Confrontation Clause.

## II. FACTS

On June 28, 2002, defendant and his wife, Sharon Lonsby, spent the day with the victim, their 12-year-old granddaughter.[4] The record reflects that, after they went shopping, the three returned to the Lonsbys' apartment where defendant and the victim changed into their bathing suits. While Mrs. Lonsby was occupied in other rooms of the apartment, defendant and the victim began to watch a movie in the living room. According to the victim, while they watched the film, defendant began to gesture for her to remove her bathing suit top and, after some hesitation, she did so. The victim further testified that defendant walked over to her and touched her chest with his hand and mouth. The victim recalled that, when Mrs. Lonsby walked into the living room, defendant hurried back to his chair.

---

[4] Defendant's wife is the victim's natural grandmother and defendant is the victim's step-grandfather.

The victim asserted that, after Mrs. Lonsby left the room, defendant took his penis out of his swim trunks and asked the victim to touch it. The victim testified that when she did, clear fluid came out of defendant's penis and fell on the arm of the chair and on the front of defendant's swim trunks. Defendant then changed out of his swim trunks and into a pair of black dress pants. The victim stated that when defendant returned, he digitally penetrated her and rubbed his penis on her vagina. After the incident, the victim told Mrs. Lonsby about the assault and, later that night, the victim's mother took her to the hospital for an examination and treatment. Officer Steven Harrington took the victim's statement at the hospital and then went to defendant's apartment and seized defendant's swim trunks. At trial, Officer Harrington testified that, when he took possession of the swim trunks, he saw a dried, white stain on the front of the trunks. The emergency room doctor who examined the victim testified that he could not conclusively determine whether the victim was sexually assaulted.

Defendant testified that he neither sexually assaulted the victim nor asked her to remove her clothing. Defendant recalled that he changed into a pair of pants that evening, but said he did so because his wife pointed out that he had a wet spot on his swim trunks. Defendant maintained that the spot was urine, not semen, because the spot appeared only after he went to the bathroom. Mrs. Lonsby also testified at defendant's trial and insisted that the assault could not have occurred because she entered the living room several times while defendant and the victim were watching the movie. She also corroborated defendant's story by testifying that she saw defendant when he entered the bathroom that evening and that she saw the wet spot on his trunks when he left the bathroom. Mrs. Lonsby also

explained that she bought defendant's swim trunks at a second-hand store or a garage sale a few weeks before the incident, but she did not wash them before defendant wore them.

The only other witness to testify at defendant's trial was David Woodford. Woodford acknowledged that he took no part in the case and that he did not perform any analysis on the rape kit, the victim's bathing suit, or defendant's swim trunks. All the testing and analysis was performed by Melinda Jackson. Indeed, Woodford acknowledged that the first time he learned anything about the case was on the morning of trial. Nonetheless, and without objection, Woodford testified about the contents of Jackson's lab report and the notes she took during her examination of the evidence. He also testified about what Jackson found, how she conducted certain tests, and why she opted not to conduct other tests.

Specifically, Woodford testified from Jackson's report and notes that no semen or foreign hairs were found in the rape kit taken at the hospital, but Jackson's notes indicated that she found two foreign pubic hairs in the victim's swimsuit. According to Woodford, Jackson did not request known hairs from defendant, and he theorized that she failed to do so because the hairs from the swimsuit were insufficient to make a comparison of their pertinent characteristics. Woodford further testified that Jackson found semen on the inside lining of defendant's swim trunks and that the lining was frozen for storage. He also stated that Jackson's notes indicated that a chemical test revealed that there was a spot of semen on the front of the swim trunks, but that it was a "very, very weak" positive result. Woodford went on to say that "the lab" could not confirm the presence of semen on the front of the swim trunks through a

protein test, "probably due to the fact that . . . the quantity of semen was just not there to test." Woodford speculated that Jackson could not state in her lab report that the spot on the front of the trunks was semen because she could not confirm it through the protein test.

The jury convicted defendant on April 7, 2003. On June 20, 2003, defendant filed a motion for new trial and argued that Woodford's testimony was inadmissible hearsay and that the prosecutor committed a *Brady*[5] violation by failing to disclose Jackson's findings regarding the stain on the outside of defendant's swim trunks and the foreign hairs found in the victim's bathing suit. The trial court denied defendant's motion, but defendant brought a second motion for new trial on February 6, 2004, and argued, among other things, that, pursuant to *People v McDaniel*, 469 Mich 409; 670 NW2d 659 (2003), issued November 4, 2003, and *Crawford v Washington*, issued March 8, 2004, Woodford's testimony was inadmissible hearsay and violated defendant's rights under the Sixth Amendment's Confrontation Clause. In response, the prosecutor argued that, by failing to object for reasons of trial strategy, defense counsel waived any claim of error. After oral argument, the trial court denied defendant's motion because it ruled that defendant waived any error with regard to his hearsay and Confrontation Clause claims.

### III. ANALYSIS

#### A. TRIAL COURT'S RULING

Defendant contends that the trial court's denial of his motion for a new trial is contrary to the holdings of the United States Supreme Court and the Michigan

---

[5] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 25 (1963).

Supreme Court in *Crawford* and *McDaniel* respectively.
A "trial court's decision regarding a motion for a new
trial is reviewed for an abuse of discretion." *People v
Leonard*, 224 Mich App 569, 580; 569 NW2d 663 (1997).
As the *Leonard* Court further explained:

> This Court's review, however, requires us to examine the
> reasons given by the trial court for granting a new trial in
> order to determine if the court abused its discretion. *People
> v Bart (On Remand)*, 220 Mich App 1, 11; 558 NW2d 449
> (1996). Where the reasons given by the trial court are
> inadequate or not legally recognized, the trial court abused
> its discretion. *Id.* at 15; *Petraszewsky v Keeth (On Remand)*,
> 201 Mich App 535, 539-543; 506 NW2d 890 (1993). [*Le-
> onard, supra* at 580.]

In his motion for a new trial, defendant raised both
hearsay and constitutional arguments regarding Wood-
ford's testimony, and he also raised these issues in
connection with his claim of ineffective assistance of
counsel. At the motion hearing, the trial court ruled
that defendant waived his allegations of error regarding
Woodford's testimony because, in the trial court's opin-
ion, defense counsel appeared to have chosen not to
object to the testimony for reasons of trial strategy.

We agree with defendant that the trial court erred
when it found that defendant waived any claims of error
regarding Woodford's testimony. A party waives an
issue only if the party intentionally relinquishes or
abandons a known right. *People v Carter,* 462 Mich 206,
215; 612 NW2d 144 (2000). On the other hand, a party
*forfeits* an issue if the party fails to make a timely
assertion of a right. *Id.* Woodford was ostensibly offered
as an expert witness to testify in the area of serology,
but was questioned, nearly exclusively, about Melinda
Jackson's notes and the report that she authored to
document her observations and testing of the only
physical evidence introduced in this case. It is well-

settled that an expert witness may rely on hearsay evidence when the witness formulates an opinion. *People v Caulley*, 197 Mich App 177, 194; 494 NW2d 853 (1992), citing MRE 703. However, here, Woodford's testimony was not offered for the purpose of rendering an expert opinion on an aspect of the case, but as a means to introduce Jackson's out-of-court statements in her lab notes. Though defense counsel indicated that he had no objection to the admission of Woodford's anticipated testimony as an expert witness, he did not thereby necessarily waive an objection to the entire contents of Woodford's testimony.

Further, the record reflects that the trial court simply ignored defendant's hearsay and constitutional arguments when it ruled that defense counsel must have declined to object to Woodford's testimony for strategic reasons. This conclusion both confuses the waiver and forfeiture rules and conflates the appropriate standards of review for defendant's substantive allegations of error. Accordingly, we hold that the trial court abused its discretion when it denied defendant's motion on this basis.

### B. WOODFORD'S TESTIMONY: *CRAWFORD* VIOLATION

Had the trial court properly reviewed defendant's claims of error, it should have ruled that defendant is entitled to a new trial. Aside from Woodford's testimony, this case rested entirely on the jury's assessment of the credibility of the witnesses. To support the victim's credibility, and undermine defendant's credibility, the essence of the prosecutor's case was that, when defendant sexually assaulted the victim, semen dropped on the front of his swim trunks. Defendant, in contrast, maintained that he inadvertently urinated on the front of his swim trunks. Thus, the prosecutor made the

crime lab findings central to its case that, as a scientific matter, the stain on the front of defendant's swim suit was, in fact, semen. Yet, Melinda Jackson's lab report did not answer this critical question. Rather, during his testimony, Woodford read from, summarized, interpreted, and speculated from Jackson's written notes that she prepared during her forensic examination.

As discussed, Woodford testified that Jackson's notes indicate that she initially found that the stain tested positive for semen. However, further testing could not confirm the initial finding because, according to Woodford, the quantity was likely too small. Because the presence of semen could not be confirmed, Woodford testified that Jackson could not include the results of the first, positive test in the lab report. At first blush, this testimony would appear to benefit defendant's position because the lab report does not officially reflect the presence of semen on the front of defendant's swim trunks. However, because Woodford testified to the presence of semen on the basis of Jackson's notes, Woodford in fact, and importantly, corroborated the victim's position that defendant ejaculated on the front of his swim trunks during the assault.

Further, though he did not participate in any analysis of the evidence, Woodford testified in the first-person plural. For example, Woodford testified that "*we* did find semen on the inside lining of . . . these swim trunks," and "when *we* tested [the stain] the preliminary results came up positive for semen." (Emphasis added.) The prosecutor did not refute the implication of Woodford's participation. The prosecutor, while questioning Woodford, repeatedly made comments such as "in *your* examination of the evidence in this case" and, referring to the sample, "*you* were able to collect." (Emphasis added.) By testifying as though he person-

ally conducted the tests on the disputed evidence, Woodford, without personal knowledge, bolstered the credibility of Jackson's statements regarding what were merely tentative scientific conclusions.

Moreover, relying on Jackson's notes, Woodford testified that Jackson found two foreign pubic hairs on the victim's swimsuit. This information also was not included in the lab report because further testing did not occur. Woodford guessed that Jackson did not perform hair comparison testing because the hairs were merely fragments or were missing their roots. Again, however, evidence that the crime lab found foreign pubic hairs on the victim's clothing clearly corroborated the victim's position that a sexual assault occurred.

Throughout the trial, the prosecutor emphasized to the jury the considerable importance of Woodford's testimony regarding Jackson's tests and observations and he repeatedly relied on this substantive evidence to bolster the prosecution's case. For example, during voire dire, the prosecutor told potential jurors that crime lab evidence would *corroborate* the victim's testimony regarding the assault. Further, in his opening statement, the prosecutor told the jury that the crime lab *found semen* on defendant's swim trunks, "exactly in the location that [the victim] had described, exactly the way that [the victim] described." (Emphasis added.) The prosecutor also used his cross-examination of Mr. and Mrs. Lonsby to repeatedly place before the jury the crime lab finding of semen on the swim trunks. When he cross-examined Sharon Lonsby, the prosecutor asked, "If I told you that subsequent investigation, which I'm sure you know turned out that that substance that was on his shorts was semen and not pee, would that change your opinion as to what happened in

the bathroom or in the living room?" Again, the prosecutor raised the point during his cross-examination of defendant:

> *Q.* And it's, it's your testimony that the substance on your pants was urine?
>
> *A.* Yes, sir.
>
> *Q.* Despite the fact that the *crime lab says it's semen?*
>
> *A.* It was urine.
>
> \* \* \*
>
> *Q.* And it's your testimony today that that was urine?
>
> *A.* Yes, sir.
>
> *Q.* Despite the fact that the *crime lab says it's semen?*
>
> *A.* Yes, sir. [Emphasis added.]

Indeed, in the prosecutor's closing argument, he again reinforced to the jury that the victim's very credibility was *"tested at the Michigan State Police Crime Lab,"* and further opined:

> We talk about a wet spot on a pair of shorts. We have an explanation for that. It was, it was stray urine, and that stray urine was left on my shorts and that's why that wet spot was there. *But the crime lab didn't find urine, they found semen.*
>
> \* \* \*
>
> And the number one important thing or the strongest piece of evidence against the Defendant in this case are [sic] the blue shorts that she [the victim] described. [Emphasis added.]

The prosecutor also asserted, "[T]here is a little, there is a 12-year-old girl . . . who the people at the crime lab do not know who says that they're going to find a white substance on these shorts that she believed was semen.

So they do, and they find it." And, to further highlight the semen evidence, in his rebuttal argument the prosecutor said:

> Whether [defendant] wiped the semen off when he was in the bathroom, whether he tried to hide the shorts, whether he thought nobody would know, we know. You and I know what he did. *The crime lab knows what he did.* The victim knows what he did. And what he did was criminal sexual conduct in the first degree . . . . [Emphasis added.]

Significantly, while the semen and pubic hair evidence *were not noted in the lab report* throughout the proceedings, the prosecutor urged the jury to consider Woodford's testimony regarding the contents of Jackson's notes as decisive proof of defendant's guilt because "[t]he crime lab knows what he did."

### C. ADMISSIBILITY

Again, we note that the disputed portions of Woodford's testimony concerned Jackson's lab report and notes, which were not introduced into evidence or authenticated. We agree with defendant that Woodford's testimony was clearly hearsay under MRE 801(c), which defines the term as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The prosecutor did not ask Woodford to render an opinion on an aspect of the case on the basis of his research and expertise. Rather, the prosecutor relied on Woodford to testify about Jackson's out-of-court lab notes to prove that the spot on defendant's swim trunks, where the victim testified ejaculate fell, was, in fact, semen. Though the prosecutor asserts, without analysis, that Jackson worked under Woodford's supervision and that, therefore, Woodford could testify about Jackson's writings, he cites no evidentiary

rule or case law to show that this constitutes a recognized hearsay exception.[6] We have also found no exception that would render Woodford's hearsay testimony admissible. MRE 802.

To support their positions on admissibility, both parties cite *People v McDaniel*, which was issued seven months after defendant's conviction. However, and regardless of whether *McDaniel* applies retrospectively, the disputed evidence is "testimonial" hearsay as defined in *Crawford* and is thus inadmissible as violative of the Confrontation Clause.[7] That is, without regard to

---

[6] Nor does the prosecutor cite any record evidence that Jackson worked under Woodford's supervision during this case or at any other time. To the contrary, Woodford admitted that the first time he learned anything about the case was on the morning of trial.

[7] The prosecutor does not present an argument that the documentary evidence authored by Jackson was admissible under the business records or public records exception, as discussed in *McDaniel*, and asserts only that the evidence was trustworthy and that it was not prepared in anticipation of litigation. However, under *McDaniel's* plain reading of MRE 803(6) and (8), it is clear that the documents about which Woodford testified were not admissible.

In *McDaniel*, a chemist testified about the contents of a lab report prepared by a retired colleague. *McDaniel, supra* at 410-411. The report contained the conclusions of the nontestifying chemist regarding his analysis of a packet of suspected heroin. *Id.* The trial court ruled that the chemist's testimony established a foundation to admit the lab report into evidence under the public records exception to the hearsay rule, MRE 803(8). *Id.* at 411. The Court of Appeals agreed and affirmed the defendant's conviction. *Id.* On appeal, the Supreme Court reversed and ruled that the report was clearly hearsay and did not fall under the public records exception because MRE 803(8) does not apply to police reports made in an adversarial setting. *Id.* at 413. The Court further ruled that, because the lab report was prepared in anticipation of litigation, it did not fall under the business records exception and was, therefore, inadmissible hearsay. *Id.* at 414.

Similarly, here, because Jackson worked for the State Police crime lab, her notes and lab report were, by nature, adversarial and were "destined" to identify the substance on defendant's swim trunks for prosecution. Furthermore, the evidence helped to establish that a sexual assault

whether the evidence could clear the hurdles posed by our state's hearsay exceptions, Woodford's testimony was inadmissible for failure to meet the standards required by the Confrontation Clause as interpreted in *Crawford*.

The prosecutor contends that *Crawford* does not control because the Supreme Court issued its decision after defendant's conviction. However, this Court has held that *Crawford* applies retroactively to cases pending on direct review. *People v Bell*, 264 Mich App 58, 62; 689 NW2d 732 (2004); *People v McPherson*, 263 Mich App 124, 135 n 10; 687 NW2d 370 (2004). Further, it is well-established that a new rule for the conduct of criminal prosecutions that is grounded in the United States Constitution applies retroactively to all cases, state or federal, pending on direct review or not yet final. *Powell v Nevada*, 511 US 79, 84; 114 S Ct 1280; 128 L Ed 2d 1 (1994); *Griffith v Kentucky*, 479 US 314, 328; 107 S Ct 708; 93 L Ed 2d 649 (1987); *People v Sexton*, 458 Mich 43, 54; 580 NW2d 404 (1998). *Crawford* was concerned with an individual's rights under the Confrontation Clause, and the case enunciated a new rule grounded in the United States Constitution

occurred and that defendant committed the assault for sexual gratification, an essential element of the crime of second-degree criminal sexual conduct. MCL 750.520c(1)(a); MCL 750.520a(n) ("Sexual contact" is "the intentional touching of the victim's or actor's intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification . . . ."). As our Supreme Court explained in *McDaniel*, hearsay observations made during law enforcement investigations are adversarial and the trustworthiness of the evidence "is undermined when the records are prepared in anticipation of litigation." *McDaniel, supra* at 413-414. Here, the source and purpose of the hearsay evidence similarly undermine any impartial trustworthiness. Jackson did her examination and testing with the ultimate goal of uncovering evidence against a defendant and successfully prosecuting him. Accordingly, the documents are not admissible under the hearsay exceptions for business or public records, MRE 803(6) and (8).

for the conduct of criminal prosecutions. Accordingly, *Crawford* applies retroactively to all cases pending on direct review or not yet final at the time the decision was handed down. Because this case was pending on direct review at the time *Crawford* was decided, *Crawford* applies retroactively.

In *Crawford*, the Supreme Court abrogated the test set forth in *Ohio v Roberts*, 448 US 56, 65; 100 S Ct 2531; 65 L Ed 2d 597 (1980), which held that out-of-court statements made by unavailable witnesses could be admitted without violating a defendant's confrontation right if there existed sufficient indicia of reliability under evidentiary hearsay rules. *Crawford* held that out-of-court statements that are testimonial are barred under the Confrontation Clause unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant, regardless of whether the statements are otherwise deemed reliable under the rules of evidence. *Crawford*, *supra* at 68. Here, no proof was offered at trial to show that Jackson was unavailable to testify.[8] Further, defendant did not have a prior opportunity to cross-examine Jackson. Accordingly, if the evidence is "testimonial" as defined in *Crawford*, Woodford's testimony regarding the contents of Jackson's lab report and notes is barred under the Confrontation Clause.

The Supreme Court in *Crawford* declined to provide a comprehensive definition of what constitutes testimonial evidence. Instead, the Court stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*. at 68. Importantly, the Court also recognized

---

[8] It appears that the parties did not present evidence regarding Jackson's unavailability because this issue was not raised below.

various other statements that have been considered testimonial, including pretrial statements that the declarant would reasonably expect to be used in a prosecutorial manner and " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . .' "[9] *Id.* at 51 (citations omitted).

Here, Jackson's writings clearly qualify as statements that Jackson would reasonably expect would be used in a *prosecutorial* manner and at trial. *Id.* at 51. As a State Police crime lab scientist, Jackson performed her analysis and testing of the rape kit and swimsuits with the ultimate goal of uncovering evidence for use in a criminal prosecution. Further, the State Police crime lab is an arm of law enforcement and the scientists' written analyses are regularly prepared for and introduced in court.[10]

---

[9] The Court in *Crawford* observed that business records are not testimonial. *Crawford, supra* at 55, 76 (Rehnquist, C.J., concurring, also included public records). Because, for the reasons explained above, the disputed documents are both adversarial and were prepared in anticipation of litigation, they do not qualify under the business or public records exceptions to the hearsay rule.

[10] Courts in other jurisdictions are split regarding whether a lab report itself is testimonial and whether its admission violates the Confrontation Clause. In *People v Hernandez*, 7 Misc 3d 568, 570; 794 NYS2d 788 (2005), the New York County Supreme Court ruled that a latent fingerprint report is testimonial, though it is a business record, because the fingerprints "were taken with the ultimate goal of apprehending and successfully prosecuting a defendant." Further, in *Las Vegas v Walsh*, 120 Nev 392; 91 P3d 591, 595, mod 100 P3d 658 (2004), the court ruled that a nurse's affidavit was testimonial and was not admissible to show alcohol in the defendant's blood because the document was prepared for the prosecution's use at trial. Similarly, in *People v Rogers*, 8 AD3d 888, 891; 780 NYS2d 393 (2004), the court ruled that the admission of a blood test report violated the defendant's rights under the Confrontation Clause "[b]ecause the test was initiated by the prosecution and generated by the desire to discover evidence against defendant . . . ." See

Moreover, the evidence at issue was based on Jackson's subjective observations and analytic standards that established a fact critical to proving the alleged offense. Because the evidence was introduced through the testimony of Woodford, who had no firsthand knowledge about Jackson's observations or analysis of the physical evidence, defendant was unable, through the crucible of cross-examination, to challenge the objectivity of Jackson and the accuracy of her observations and methodology.[11] Moreover, because Woodford could only speculate regarding Jackson's reasoning, defendant could not question or attack Jackson's preliminary test results or the soundness of her judgment in failing to conduct additional tests.[12] Therefore, the

also *Commonwealth v Carter*, 861 A2d 957, 969 (Pa Super, 2004) (lab report identifying a confiscated substance as cocaine constituted inadmissible hearsay and its admission violated defendant's right to confront witnesses against him "when the court admitted the lab report without the testimony of the forensic scientist who performed the mechanics of the testing and prepared the report."). Cf. *People v Durio*, 7 Misc 3d 729, 736; 794 NYS2d 863 (2005) (an autopsy report not prepared for benefit of the prosecution is not testimonial); *State v Carter*, 326 Mont 427, 437; 114 P3d 1001 (2005) (weekly and annual certification reports for breath test machine are not substantive or accusatory and are not testimonial).

[11] Without Jackson at trial, for example, defense counsel could not question Jackson about any communications she may have had with the police and whether they may have influenced her findings.

[12] Indeed, Woodford's testimony would not satisfy even the more lenient, pre-*Crawford* standard established by *Ohio v Roberts*. Before *Crawford*, courts in other jurisdictions examined whether a Confrontation Clause violation occurs when a trial court admits the testimony of another crime lab scientist in lieu of the testimony of the scientist who conducted the testing and prepared the crime lab report. In *State v Kennedy*, 7 SW3d 58, 66-67 (Tenn App, 1999), the court considered whether the reliability prong of *Roberts* was met when a special agent testified about the results of a DNA (deoxyribonucleic acid) profile, though a lab technician performed "the mechanically objective preparatory procedure" necessary for the special agent's analysis and interpretation. The court found no constitutional violation because the special agent "checked the computations of the technician and verified that the

introduction of Jackson's hearsay statements through the testimony of Woodford falls squarely within *Crawford*'s prohibition of testimonial hearsay that is reasonably expected to be used by the prosecution at trial. Because there is no showing that Jackson was unavailable to testify and that defendant had a prior opportunity to cross-examine her, the admission of the evidence violated defendant's Confrontation Clause rights, as defined by the United States Supreme Court in *Crawford*.

### D. NEW TRIAL: PREJUDICIAL OR HARMLESS ERROR

Notwithstanding this violation of defendant's constitutional rights, a question remains whether defendant

---

technician would have followed the standard laboratory procedures." *Id.* at 66. The *Kennedy* court cited other cases in which courts found that similar testimony raised no Confrontation Clause concerns *as long as the testifying witness directly supervised the analysis or performed the essential portions of the analysis.* See *Gray v State*, 728 So 2d 36 (Miss, 1998); *State v Daughtry*, 340 NC 488, 511-512; 459 SE2d 747 (1995).

The Supreme Court of Wisconsin also surveyed cases from other states and observed that those courts that found no Confrontation Clause violation in these circumstances also found that, "[i]n each case, the testifying expert was highly qualified and had a close connection with the testing in the case such that the expert's presence at trial satisfied the defendant's rights to confront and cross-examine." *State v Williams*, 253 Wis 2d 99, 111; 644 NW2d 919 (2002), citing *Kennedy, supra, Reardon v Manson*, 806 F2d 39 (CA 2, 1986), and *Adams v State*, 794 So 2d 1049 (Miss App, 2001). As the *Williams* court further explained at 113:

> The critical point . . . is the distinction between an expert who forms an opinion based in part on the work of others and an expert who merely summarizes the work of others. In short, one expert cannot act as a mere conduit for the opinion of another.

Here, Woodford did not participate in the analysis or testing of the evidence and his testimony was almost entirely a summary of Jackson's work. Clearly, and regardless of whether the results in the above cases would satisfy the new *Crawford* standard, Woodford's testimony would not pass constitutional muster under pre-*Crawford* standards.

is entitled to a new trial. As discussed, defendant did not preserve this issue by asserting a timely objection to the disputed testimony at trial. Certainly, because the Supreme Court decided *Crawford* long after his trial, defendant could not timely assert the precise grounds he raised in his motion for new trial and on appeal. Arguably, however, defendant could have raised an objection on Confrontation Clause grounds under the standard then applicable, *Ohio v Roberts*. Indeed, defendant could have argued that the testimony did not bear adequate indicia of reliability because of its adversarial nature and that it did not fall under a firmly rooted hearsay exception.[13] Yet it was not until after his conviction that defendant objected to the testimony on foundational, hearsay, or constitutional grounds.

Our courts have held that when a subsequent ruling on a constitutional issue applies retroactively, the defendant, regardless of whether the matter has been preserved, is entitled to review under the standard of harmless beyond a reasonable doubt. *People v Shirk*, 383 Mich 180, 196; 174 NW2d 772 (1970); *People v Townsend*, 25 Mich App 357, 361-362; 181 NW2d 630 (1970). Indeed, our Supreme Court has reviewed issues that were first raised on appeal as though they had been properly raised on the basis that the delay in raising the issues was related to a subsequent development in the law, "rather than . . . any dilatory practice on the part of plaintiff or defendants." *Auto Club Ins Assn v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358, 373; 505 NW2d 820 (1993). And, in *Townsend*, this Court reasoned that "a defendant should not be required to anticipate overrulings or be compelled to make the futile gesture of raising issues to preserve his direct appellate rights in the event of an overruling decision."

---

[13] See n 12.

*Townsend, supra* at 361. Yet our Supreme Court has since ruled that in criminal cases, all unpreserved constitutional issues will be reviewed under the plain error doctrine. *People v Carines*, 460 Mich 750, 765; 597 NW2d 130 (1999).

However, *Carines* did not address, and thus did not answer, the question before us. That is, unlike the defendant in this case, the defendant in *Carines* failed to raise a specific objection that was clearly available to him. Here, defendant did not have the benefit of the *Crawford* ruling and, thus, a specific objection would likely have been futile. And, because the United States Supreme Court has held that overruling decisions involving constitutional questions must be applied retrospectively to cases pending on appeal,[14] the defendant here clearly has the benefit of raising an issue "preserved" for him by operation of law. Thus, the question of which standard of review applies—the constitutional standard of harmless error or the plain error standard—is not resolved by *Carines*.

Nonetheless, fundamental fairness would dictate that, in a case with these facts, a defendant should be afforded review, including whether the error was harmless beyond a reasonable doubt, as though the matter were fully preserved to prevent the dilution of the very constitutional right solidified by the change in law. However, we need not decide whether the standard of review should be under the "more requiring"[15] constitutional standard because, under either standard, defendant is entitled

---

[14] See *Powell, supra*; *Griffith, supra*.

[15] Because this standard imposes the burden on the prosecutor to prove, beyond a reasonable doubt, that the claimed error did not affect the outcome, the harmless error standard is "more requiring" on the prosecutor than the *Carines* standard. Under *Carines*, *defendant* has the burden to show that the error was plain and that it affected his substantial rights. *Carines, supra* at 763.

to a new trial.[16] Because defendant did not have an opportunity to cross-examine Jackson, and Jackson's out-of-court declarations were admitted to prove the truth of the matter asserted on a critical issue in the case, we find that plain error occurred under *Carines.* Also, under the plain error doctrine, the error seriously affected the fairness and integrity of the proceedings and it was outcome determinative. Were we to hold that the harmless error standard applied, we would also conclude that the error was not harmless beyond a reasonable doubt.

As discussed, this case presents a classic example of the prejudicial effect of admitting inadmissible, "testimonial" hearsay statements without a prior opportunity for cross-examination. Woodford played no role in the examination or analysis of the only physical evidence that was pivotal in the outcome of this case. Furthermore, rather than testifying about lab procedures and general testing methods, Woodford read from and summarized Jackson's lab notes and made speculative assertions regarding her professional decisions and forensic conclusions. Jackson did not, and scientifically could not, conclude that the spot on defendant's swim trunks was semen, yet Woodford testified about the results of Jackson's preliminary semen test, he "guessed" the reasons Jackson could not confirm her initial finding, and the prosecutor relied very heavily on this evidence to persuade the jury to convict defendant.

The prosecutor's argument that the admission of the testimony could not have prejudiced defendant because the lab evidence was simply inconclusive is belied by the record evidence that reveals the prosecutor's heavy

---

[16] As our Supreme Court has repeatedly instructed, this Court should not address constitutional issues if the matter may be decided on nonconstitutional grounds. *People v Riley,* 465 Mich 442, 447; 636 NW2d 514 (2001).

emphasis on Woodford's testimony. The prosecutor's entire argument focused on the fact that this case presented a question of credibility, and he bolstered the victim's credibility and undermined defendant's credibility by relying almost entirely on Woodford's testimony regarding Jackson's out-of-court statements.

As we noted earlier, throughout the trial the prosecutor emphasized to the jury the importance of Woodford's testimony. During voir dire, the prosecutor told potential jurors that the crime lab evidence would *corroborate* the victim's testimony regarding the assault. In his opening statement, the prosecutor told the jury that the crime lab *found semen* on defendant's swim trunks, "exactly in the location that [the victim] had described, exactly the way that [the victim] described." The prosecutor also used his cross-examination of Mr. and Mrs. Lonsby to repeatedly place before the jury the State Police crime lab finding of semen on the swim trunks. In the prosecutor's closing argument, he again reinforced that the victim's credibility was "tested at the Michigan State Police Crime Lab," further opined that the strongest piece of evidence was the swim trunks, and again stated that "the crime lab didn't find urine, they found semen." And, to further highlight the semen evidence, in his rebuttal argument the prosecutor stated, "The crime lab knows what he did."

To a virtual certainty, the evidence, as presented by the prosecutor, tipped the scale in favor of the prosecution in what would otherwise be strictly a credibility contest. Under these facts, the prejudice was clearly sufficient to entitle defendant to a new trial.[17]

---

[17] As stated above, we reach this conclusion regardless of whether we apply the *Carines* standard or the constitutional standard that requires the prosecutor to show that the error was harmless beyond a reasonable doubt.

E. SUMMARY AND CONCLUSION

The trial court abused its discretion in denying defendant a new trial. Defendant's claims of error regarding Woodford's testimony were not waived but merely forfeited. And though unpreserved by objection, defendant's claims nevertheless warrant review given the subsequent development in the law as set forth in *Crawford*. Under the rule announced in *Crawford*, Woodford's testimony constituted inadmissible testimonial hearsay because it was reasonably expected that Jackson's out-of-court statements would be used at a later trial, there was no showing that Jackson was unavailable to testify at trial, and defendant never had an opportunity to cross-examine Jackson. Further, the admission of the testimony affected defendant's substantial rights and was not harmless in light of the prosecution's significant reliance on the Michigan State Police crime lab findings reflected in Woodford's testimony.

Reversed and remanded for a new trial.[18] We do not retain jurisdiction.

WHITBECK, C.J. I concur in the result only.

TALBOT, J. I concur in the result only.

[18] Because this issue is dispositive, we decline to address defendant's remaining issues on appeal.