# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TAVARES JAMALE BROOKS,

        Defendant-Appellant.

UNPUBLISHED
March 24, 2015

No. 318995
Saginaw Circuit Court
LC No. 13-038358-FC

Before: WILDER, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a); felon in possession of a firearm, MCL 750.224f; carrying a dangerous weapon with unlawful intent, MCL 750.226; and three counts of possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b(1). The trial court sentenced defendant as an habitual fourth offender, MCL 769.12, to life without the possibility of parole for the murder conviction, 60 to 120 months for the felon in possession and carrying a dangerous weapon convictions, and concurrent two year terms for each of the felony firearm convictions, to be served consecutively to the other sentences. We affirm.

## I. FACTS

The prosecution alleged that defendant shot Dion Jacobs six times with a 9 mm semi-automatic pistol, killing him, after Jacobs and Aaron Johnson stole $2,000 to $3,000 worth of marijuana from defendant. Right after he was shot, Jacobs collapsed onto the kitchen steps of his mother's home. She testified that when he was asked who shot him, he replied "TJ." While subsequently being treated by emergency personnel, Jacobs was pronounced dead. Johnson testified that Jacobs always referred to defendant as "TJ."

## II. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Defendant first argues that the prosecution presented insufficient evidence to sustain his convictions or alternatively, that the verdict was against the great weight of the evidence. We disagree. This Court reviews a defendant's challenge to the sufficiency of the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court reviews a trial court's denial of a defendant's motion for new trial on grounds that the jury's verdict was against

-1-

the great weight of the evidence for an abuse of discretion. *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *Id*.

When determining whether defendant's conviction is supported by sufficient evidence, this Court must ask whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992). All evidence should be viewed in a light most favorable to the prosecution. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime, including the defendant's state of mind, knowledge, or intent. See, e.g., *People v Kanaan*, 278 Mich App 594, 622-623; 751 NW2d 57 (2008).

Defendant argues that the prosecution failed to establish that he was the killer and, coextensively, that he was guilty of the related crimes. Identity is an essential element in every criminal prosecution. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). However, the prosecution presented more than sufficient evidence to establish that defendant murdered Jacobs. First, immediately after being shot Jacobs identified the perpetrator as "TJ." The medical examiner established that Jacobs was shot in the front of his body, indicating that he was in a position to positively identify his assailant. Furthermore, because Jacobs was fatally wounded and actively dying, he had no reason to lie about defendant's identity. Similarly, considering that Jacobs' mother testified that she had never met anyone named "TJ," it was reasonable for the jury to conclude that she was being truthful about Jacobs' last words; Jacobs' dying declaration was credible, direct evidence that "TJ" was the shooter.

In addition, the prosecution presented sufficient circumstantial evidence to establish that defendant was the "TJ" Jacobs identified. Johnson testified that he, Jacobs, and defendant had known each other for 18 years, and that he and Jacobs had always referred to defendant as TJ. He testified that he stole roughly $2,000 of marijuana from defendant, and Jacobs helped him do so, which would explain defendant's motive for killing Jacobs. "In cases in which the proofs are circumstantial, evidence of motive is particularly relevant." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). Defendant argues that there was no evidence that defendant actually knew about Jacobs' participation in the robbery. However, the evidence established that Jacobs and Johnson were good friends, that defendant had known Jacobs and Johnson for many years, and that all three men lived in the same area. It was reasonable for the jury to infer that defendant could have easily discovered that Jacobs helped Johnson commit the robbery.

Defendant also argues that Johnson was so thoroughly impeached that the jury could not have believed his testimony. However, "the jury is free to believe or disbelieve, in whole or in part, any of the evidence presented at trial." *Id*. at 228. This is especially true of matters of witness credibility. *Id*. In this case, many of the details within Johnson's testimony were impeached. But, when considered in conjunction with the prosecution's corroborating evidence, he was not so impeached as to warrant wholesale disbelief of his testimony. Items generally associated with drug dealing were found at defendant's apartment, including a box for a digital scale, plastic baggies, $6,000 in cash rolls, and a handwritten ledger. In addition, the prosecution introduced a receipt, supporting Johnson's assertion that he had sent his baby's mother to a motel on the night of the robbery after defendant came to his house and pounded on the door. Finally,

Jacobs' girlfriend, Djuana Gilmore, had said she was present when Jacobs and Johnson discussed a plan to take TJ's property.

The jury had the opportunity to personally view Johnson's testimony and judge his credibility accordingly. We will not interfere with its decision. The prosecution sufficiently established that Jacobs identified his killer as "TJ." It also sufficiently established that Jacobs had a previous relationship with defendant, and that he referred to him as "TJ." Finally, the prosecution established that defendant had a motive for killing Jacobs, as Jacobs and Johnson stole $2,000 of marijuana from defendant. Viewed in a light most favorable to the prosecution, these facts were sufficient to establish that defendant killed Jacobs.

We also conclude that the verdict was not against the great weight of the evidence. To determine whether a verdict is against the great weight of the evidence, the lower court must decide whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow it to stand. *Lacalamita*, 286 Mich App at 469-70. Generally, a verdict may be vacated only when "the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id.* Matters of witness credibility remain within the province of the jury. *Id.* at 470. Thus, the lower court may not grant a new trial based on the credibility of a witness unless there is a real concern that an innocent person may have been convicted or that it would be a manifest injustice to allow the guilty verdict to stand. *People v Lemmon*, 456 Mich 625, 644-45; 576 NW2d 129 (1998). "Any real concern that an innocent person has been convicted would arise only if the credible trial evidence weighs more heavily in [the defendant's] favor than against it." *Id.* (internal quotations omitted).

As discussed above, the prosecution presented sufficient, credible evidence to establish that defendant murdered Jacobs. Defendant's argument once again boils down to Johnson's credibility. As previously stated, Johnson's testimony was corroborated by other evidence presented at trial and was not so heavily impeached that it would be a manifest injustice to let the jury's verdict stand.

## III. DYING DECLARATION

Next, defendant argues that the lower court denied him a fair trial by admitting Jacobs' dying declaration into evidence. At a hearing on the issue, the lower court found the declaration admissible, stating: "It's reasonable – more than reasonable to infer he thought he was going to die after being shot six times, so I believe a dying declaration is an exception that's allowable here." We agree with the decision of the lower court.

This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Adair*, 452 Mich 473, 485; 550 NW2d 505 (1996). An abuse of discretion occurs when the trial court chooses an outcome falling outside a principled range of outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Hearsay is an unsworn, out-of-court statement that is offered to establish the truth of the matter asserted. MRE 801(c). It is generally inadmissible unless it falls under one of the hearsay exceptions. *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). Here, Jacobs' statement

that "TJ did it" was hearsay, as it was made by an out-of-court declarant and offered to prove that defendant committed his murder. However, the statement qualified as an exception to the prohibition against hearsay under MRE 804(b)(2), which states that a hearsay statement made by an unavailable declarant is admissible in a homicide prosecution if 1) it is made while the declarant believes that his death is imminent, and 2) the statement concerns the cause or circumstances of his impending death. MRE 804(b)(2).

In this case, all of the requirements of MRE 804(b)(2) were met. Jacobs was obviously unavailable to testify at trial. Moreover, the evidence established that he was shot a total of six times in the arms, legs, buttocks and chest. He was only able to walk from the driveway of his home to his back door, where he collapsed onto a set of stairs. Moreover, by the time police arrived 10 to 15 minutes later, he was already having trouble breathing, and passed away shortly thereafter while EMS attempted to render aid. From these facts, it is reasonable to conclude that Jacobs understood his death was imminent. Finally, the statement concerned the cause of his death. Accordingly, the lower court properly admitted the statement as a dying declaration.

Defendant nonetheless argues that Jacobs' dying declaration violated his rights under the Confrontation Clause of the United States and Michigan constitutions. This Court reviews questions of constitutional law de novo. *People v Stevens*, 460 Mich 626, 631; 597 NW2d 53 (1999).

"[I]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Amend VI. Article 1, Section 20 of the Michigan Constitution affords criminal defendant's the same right, adopting this language verbatim. *People v Fackelman*, 489 Mich 515, 524-25; 802 NW2d 552 (2011); Const 1963, art 1, § 20. Generally, testimonial hearsay is barred under the Confrontation Clause "unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant, regardless of whether the statements are otherwise deemed reliable under the rules of evidence." *People v Lonsby*, 268 Mich App 375, 390; 707 NW2d 610 (2005). However, in *Crawford v Washington*, 541 US 36, 56 n 6; 124 S Ct 1354, 1364; 158 L Ed 2d 177 (2004), the United States Supreme Court stated *in dicta* that dying declarations, even when testimonial in nature, are a historical exception to general hearsay prohibitions and therefore do not violate the Confrontation Clause. Following suit, this Court held in *People v Taylor*, 275 Mich App 177, 183; 737 NW2d 790 (2007), that "under *Crawford,* dying declarations are admissible as an historical exception to the Confrontation Clause." As a result, even if Jacobs' dying declaration was testimonial in nature, it did not violate defendant's rights under the Confrontation Clause.

IV. GILMORE'S PRELIMINARY EXAMINATION

Next, defendant argues that the lower court erred in admitting the transcript of Gilmore's preliminary examination testimony. It was established that she was living in Chicago, had indicated that she was coming back for the trial, but was apparently unable to do so due to the imminent birth of her baby. When the prosecution requested that Gilmore be declared unavailable, defendant said that his only objection was to the hearsay statements contained within her preliminary examination transcript. Given this acquiescence, we consider the issue waived. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights,

for his waiver has extinguished any error." *People v Hall*, 256 Mich App 674, 679; 671 NW2d 545 (2003).

## IV. GILMORE'S STATEMENT TO A POLICE OFFICER

Defendant next argues that the lower court improperly admitted hearsay statements that Gilmore had made to Officer Joseph Grigg during his investigation. We disagree.

During trial, the lower court allowed the prosecution to introduce hearsay statements made by Gilmore. On cross-examination, defense counsel asked Grigg a series of questions regarding his investigation. First, defense counsel asked Grigg if Gilmore knew defendant before the shooting. Grigg responded by saying he "learned certain things" during his investigation. As a result, defense counsel had Grigg read a portion of Gilmore's preliminary examination testimony in which she stated that she did not know "TJ." Second, defense counsel asked Grigg if Jacobs' mother had told him that a man named "Smurf" may have wanted to hurt Jacobs. The following exchange occurred:

> *Q*. Thank you. In your investigation – speaking of the mother, in your investigation, did the mother suggest that there might be other people who had a reason to hurt her son?
>
> *A*. I don't believe so.
>
> *Q*. You don't? So you don't recall in your interview with her, her mentioning a gentleman that she called Smurf?
>
> *A*. I don't.
>
> *Q*. And you don't recall in her – in her testimony saying that there had been raid on her home, and Smurf was telling people that he was a snitch for the police; you don't recall that?
>
> *A*. During her testimony yesterday?
>
> *Q*. No, no. I said, in your investigation, during your interview?
>
> *A*. I don't recall the interview, no, sir. I don't recall that part. I don't.

On redirect, the prosecution asked Grigg if he developed information during his investigation that led him to defendant. Grigg said that in the beginning he learned that someone named TJ stayed in a house next to the "Yellow Store," which is a market a few blocks from Jacobs' home. He learned that TJ was involved in a marijuana robbery perpetrated by Johnson and Jacobs. The prosecution then asked Grigg what he learned from Gilmore during his investigation. Defense counsel objected, arguing that any statements made by Gilmore to Grigg were inadmissible hearsay. The lower court overruled the objection, finding that defense counsel opened the door to questions about Grigg's investigation during cross-examination. As a result, Grigg said Gilmore had told him that she was with Jacobs on the night of the robbery, that she

rode with Jacobs to the Yellow Store and that after Johnson and defendant left, Jacobs got into Johnson's car to follow them.

The lower court can admit otherwise inadmissible hearsay statements if the objecting party has opened the door to the evidence by using it to his or her advantage. *People v Verburg*, 170 Mich App 490, 498-99; 430 NW2d 775 (1988). On cross-examination, defense counsel specifically asked Grigg whether Gilmore knew defendant prior to the shooting. Grigg attempted to avoid bringing in her hearsay statement by saying that "he learned certain things" during his investigation. In response, defense counsel utilized Gilmore's preliminary examination testimony to assert that she had never met defendant before the shooting. Moreover, by referencing Smurf, defense counsel implied that Grigg may have ignored the possibility that someone else had murdered Jacobs.

The testimony on re-direct was directly responsive to defense counsel's questions on cross-examination. First, it rebutted defense counsel's assertion that Gilmore had not known defendant before he shot Jacobs. If Gilmore was present with Jacobs before and after the robbery, she may have known who defendant was prior to the shooting. Second, it indirectly rebutted defense counsel's claim that someone else may have threatened Jacobs. On cross-examination, Grigg was only able to flatly deny defense counsel's assertion. On re-direct, he was able to explain what information he actually received during his investigation, and how that information led him to defendant, rather than to the individual named Smurf.

We also conclude that admission of Gilmore's statement did not violate defendant's rights under the Confrontation Clause. The Confrontation Clause bars the introduction of testimonial hearsay, unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity for cross-examination. *Lonsby*, 268 Mich App at 390. This rule may apply even when a defendant has opened the door to the hearsay statement, making it otherwise admissible under the rules of evidence. *Fackelman*, 489 Mich at 544-45. Because Gilmore made these statements to Grigg during the course of his investigation, they are no doubt testimonial in nature. *People v McPherson*, 263 Mich App 124, 132; 687 NW2d 370 (2004). However, it is well established that the Confrontation Clause only protects against testimonial statements that are used as substantive evidence. As such, the rule does not apply to statements used for the purpose of impeachment or otherwise attacking witness credibility. *Fackelman*, 489 Mich at 528. See also *Tennessee v Street*, 471 US 409, 414; 105 S Ct 2078; 85 L Ed 2d 425 (1985).

In *McPherson*, the defendant and three accomplices, Cherell King, Marcelle Dorsey, and Delano Gaffney, were implicated in the shooting of two victims. *McPherson*, 263 Mich App at 126. The defendant gave several inconsistent statements to investigators. *Id.* First, he pointed the finger at Gaffney. *Id.* Then, he confessed to being the shooter but claimed his actions were in self-defense. *Id.* Then, he told investigators that King was the shooter. *Id.* King was later murdered by Gaffney and Dorsey, and thus was unable to testify against the defendant. *Id.* At trial, the defendant again claimed that King was the shooter. *Id.* at 131. In response, the prosecution cross-examined the defendant about his motivation for pinning the shooting on King. *Id.* As a result, the defendant testified that King admitted to "ratting" the defendant out to police. *Id.*

-6-

On appeal, the defendant argued that the introduction of King's hearsay statement violated his rights under the Confrontation Clause. *Id.* at 133. We disagreed, finding "that the prosecutor's question was designed to impeach defendant's statement that King was the shooter," and not to identify defendant as the shooter. *Id.* at 134. Because we found that King's statement was not used for its substance, but rather to attack the defendant's credibility, it did not violate the Confrontation Clause. *Id.* On appeal, the Federal Court of Appeals for the Sixth Circuit upheld this Court's original decision, finding that King's statement did not violate the defendant's rights under the Confrontation Clause because it was used to attack the defendant's credibility, and not to identify him as the shooter. *McPherson v Woods*, 506 Fed Appx 379, 389 (CA 6, 2012).[1]

Here, the prosecution premised much of its case on Johnson's testimony that he and Jacobs stole marijuana from defendant, and thus provided defendant with the motive to kill Jacobs. On cross-examination, defense counsel challenged whether Gilmore knew defendant prior to the shooting, to attack Johnson's testimony that he and Jacobs had known defendant for years, and that Jacobs helped carry out the robbery. In response, the prosecution elicited information regarding Gilmore's comment that she, Johnson and Jacobs were all present immediately prior to the robbery. The prosecution did not ask this question to prove that Gilmore was present prior to the robbery but to rebut the implication that Johnson was lying about the robbery and his previous relationship with defendant. As in *McPherson*, the prosecution offered Gilmore's statement for the purpose of bolstering or attacking credibility. Therefore, the admission of Gilmore's statement did not violate defendant's rights under the Confrontation Clause.

## V. PROSECUTORIAL MISCONDUCT/BRADY VIOLATION

Next, defendant argues that he was denied a fair trial because the prosecution failed to investigate (1) whether defendant really goes by the alias Stack-A-Grip on Instagram, (2) whether Johnson was truly admitted to the hospital because of a brain tumor, (3) whether Johnson sold some of the stolen marijuana to the Green Tree Dispensary, (4) whether Johnson received threatening phone calls, and (5) whether Jacobs actually shopped at a grocery store before the shooting. We disagree.

A prosecutor's obligations are to "prosecute with earnestness and vigor" while ensuring that justice be done. See *Cone v Bell*, 556 US 449, 469; 129 S Ct 1769; 173 L Ed 2d 701 (2009), *Strickler v Greene*, 527 US 263, 281; 119 S Ct 1936; 144 L Ed 2d 286 (1999). The prosecutor is not simply a party to the controversy but a representative of "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all . . . ." *Strickler*, 527 US at 281. While this may result in the prudent prosecutor disclosing a piece of evidence favorable to

---

[1] The Federal District Court for the Eastern District of Michigan partially granted defendant habeas corpus. *McPherson v McQuiggin*, No 06-13357, 2011 WL 3027299, 1 (ED Mich July 25, 2011) *aff'd in part, rev'd in part sub nom. McPherson v Woods*, 506 Fed Appx 379 (CA 6 2012).

the defense, "it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations." *Kyles v Whitley*, 514 US 419, 440; 115 S Ct 1555; 131 L Ed 2d 490 (1995).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). The duty to disclose exculpatory evidence is reflected in the Michigan Rules of Professional Responsibility. MRPC 3.8(d). It is applicable even where the accused has not requested the withheld evidence, and also encompasses evidence known only to police investigators, and not the prosecutor. *Strickler*, 527 US at 280-282.

In order to establish a *Brady* violation, a defendant must demonstrate (1) that the prosecution has suppressed evidence, (2) that the evidence is favorable to the defendant, and (3) that the evidence, viewed in totality, is material to the defense. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 150, quoting *United States v Bagley*, 473 US 667, 682; 105 S Ct. 3375, 87 L Ed 2d 481 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial . . . ." *Kyles*, 514 US at 434.

Here, defendant has not shown, or even suggested, that the police or members of the prosecution were in possession of any of this evidence. Rather, he argues that the police had a duty to investigate and verify the authenticity of Johnson's testimony and other pieces of evidence. Under *Brady*, the prosecution has a duty to disclose material evidence in its possession, regardless of whether it is readily available to the defendant. However, neither the police, nor the prosecution, are "required to seek and find exculpatory evidence." *People v Miller*, 211 Mich App 30, 43; 535 NW2d 518 (1995); *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003). If the prosecution did not look for or discover this evidence, then it clearly never possessed and suppressed it, as is required to establish a *Brady* violation.

VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied the right to effective assistance of counsel because his defense attorney failed to investigate and present two alibi witnesses. Defendant claims that he informed counsel that he and a woman he named had sex at his sister's house on the night of the incident until roughly 7:30 p.m. and that they stayed at the sister's home until roughly 9:00 p.m. He asserts that counsel should have called both the woman and the sister as alibi witnesses.

To preserve a claim of ineffective assistance of counsel, a defendant should move for a new trial or an evidentiary hearing in the lower court. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Failure to do so will preclude appellate review of the issue unless the record contains sufficient detail to support the defendant's claim. *Id.* at 659. Because no

*Ginther*[2] hearing has been held, this Court's review is limited to the appellate record. *Sabin*, 242 Mich App at 659.

This state has long recognized the importance of a criminal defendant's right to representation at trial. *People v Pickens*, 446 Mich 298, 311; 521 NW2d 797 (1994). The right to effective assistance of counsel is grounded in the United States and Michigan Constitutions.[3] US Const, Am VI; Const 1963, art 1, § 20. However, courts generally presume that counsel has afforded effective assistance, and it is the defendant who must overcome the burden of proving otherwise. *People v Davis*, 250 Mich App 357, 368-369; 649 NW2d 94 (2002). To establish an ineffective assistance of counsel claim, the defendant "must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms[,] . . . (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different," and (3) the result was fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

Counsel generally has a duty to advocate the defendant's cause, consult with the defendant on important decisions, keep the defendant informed of significant developments in the case, and "bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). However, "this Court will not substitute its judgment for that of counsel regarding matters of trial strategy," *Davis*, 250 Mich App at 368, or assess counsel's competence with the benefit of hindsight. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). As such, "[a] particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Id.* at 61.

Here, defendant's claim that his counsel was ineffective fails for two reasons. First, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). The failure to call an alibi witness only constitutes ineffective assistance if "it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defense counsel's judgment is presumed competent, and the defendant faces a heavy burden proving otherwise. *Rockey*, 237 Mich App at 76.

In this case, defendant failed to raise this issue in the lower court and relies on affidavits provided with his brief on appeal. Even if we consider these affidavits, which present an alibi that place defendant at his sister's house during the time of the shooting, defendant has not contradicted the presumption that defense counsel chose not to call the witnesses as a matter of trial strategy. Defense counsel could have very well believed that the witnesses were too incredible to place before the jury or could have known that the prosecution would easily rebut

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[3] The "intention underlying the Michigan Constitution does not afford greater protection than federal precedent with regard to a defendant's right to counsel when it involves a claim of ineffective assistance of counsel." *Pickens*, 446 Mich at 302.

defendant's alibi during cross-examination. Without information indicating otherwise, this Court must presume that defense counsel chose not to call these witnesses as a matter of sound trial strategy.

Regardless, defense counsel did not deprive defendant of a substantial defense. Defendant's alibi witnesses would have testified that he was not present during the shooting. Assuming they were credible, this may have helped defendant argue that the prosecution could not identify him as the shooter. However, defense counsel vigorously advocated this very defense, using cross-examination to undermine the prosecution's case. Defense counsel stringently cross-examined Johnson, drastically impeaching his credibility. Defense counsel highlighted numerous inconsistencies in Johnson's testimony and managed to elicit statements from Johnson admitting that he had lied to police about possessing a firearm. Similarly, defense counsel elicited an acknowledgment that police found no physical evidence linking defendant to the crime scene, and that police failed to investigate several questionable aspects of Johnson's testimony. Because defense counsel adequately presented the defense that police misidentified defendant as the shooter, defendant was not deprived of this defense by counsel's decision not to call his alibi witnesses.

Affirmed.

/s/ Kurtis T. Wilder
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens

-10-