# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

QUINTIN KING,

Defendant-Appellant.

UNPUBLISHED
July 23, 2015

No. 315953
Wayne Circuit Court
LC No. 11-008372-FC

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for first-degree murder, MCL 750.361(1)(a), six counts of assault with intent to murder (AWIM), MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to life in prison with eligibility for parole on the first-degree murder conviction, 30 to 80 years' imprisonment for each conviction of AWIM, and two years' imprisonment for felony-firearm. We affirm in part, vacate in part and remand to the trial court for resentencing.

This case arises from the murder of Courtney Smith outside Club Envy in the city of Detroit late in the evening of May 5, 2011, into the early morning hours of May 6, 2011. Another individual, Carlos Spearman, sustained a gunshot wound during this same incident.

Defendant contends he was denied the effective assistance of counsel at trial premised on his trial counsel's failure to secure or use an expert to address the issues pertaining to the reliability of eyewitness identifications. He further asserts trial counsel was ineffective for the failure to sufficiently investigate DeQuan Todd and Allante Moseley as witnesses and to obtain and admit a photograph of Moseley closer to the time of the events alleged in this matter. Defendant asserts that the alleged failures of his trial counsel deprived him of a substantial defense. Defendant also contends the trial court erred in its ruling by improperly conflating and failing to recognize distinctions in the claims of defendant from those of his codefendant Anton Blevins.

As discussed in *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (quotation marks and citations omitted):

Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. The trial court must first find the facts and

-1-

then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo.

A trial court's decision to deny a motion for a new trial is reviewed for an abuse of discretion. *People v Terrell*, 289 Mich App 553, 558-559; 797 NW2d 684 (2010). An abuse of discretion is found to occur when a trial court's decision falls outside the principled range of outcomes. *People v Malinowski*, 301 Mich App 182, 185; 835 NW2d 468 (2013).

The right to effective assistance of counsel during a criminal trial is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). A defendant bears a heavy burden to prove the ineffective assistance of counsel because there is a strong presumption that defense counsel provided adequate representation. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). This Court is not permitted to substitute its own judgment for that of defense counsel or to second-guess defense counsel on matters of trial strategy. Defense counsel is afforded extensive discretion with respect to the trial tactics used when trying a case. *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994); *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

To prove that defense counsel failed to provide the effective assistance of counsel, a defendant is required to demonstrate: "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) that there is a reasonable probability that defense counsel's deficient performance prejudiced defendant." *Heft*, 299 Mich App at 80-81. To establish that defense counsel's representation fell below an objective standard of reasonableness, a defendant must show that counsel's conduct fell outside of the scope of professionally competent assistance under the circumstances. *Vaughn*, 491 Mich at 670. To prove that defense counsel's deficient performance prejudiced defendant, it must be shown that the outcome of the proceeding would have been different but for the errors of defense counsel. *Heft*, 299 Mich App at 81.

Decisions regarding what witnesses to call and what questions to ask are "presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citation omitted). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id.* "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *Payne*, 285 Mich App at 190.

Defendant argues that trial counsel was ineffective for failing to secure or consult with an expert to assist at trial with addressing the issues pertaining to the reliability of the eyewitness identifications. Discussing matters that require expert testimony, our Supreme Court recently stated that "questions of eyewitness identification, fading memories, witnesses' body language, and the like involve obvious human behavior from which jurors can make 'commonsense credibility determinations.'" *People v Kowalski*, 492 Mich 106, 143; 821 NW2d 14 (2012). As such, expert testimony is not required "to explain the common human behavior" intrinsic to eyewitness identification. *Id.* In this instance, defendant has failed to demonstrate that counsel's

-2-

consultation with an expert in this area would have enhanced or improved the challenges made to the credibility of the witness identifications beyond that achieved through cross-examination. First, at the evidentiary hearing, defendant's trial counsel indicated an awareness of a multitude of factors that could influence the reliability of an eyewitness's identification, belying the necessity of consulting with an expert to recognize these factors. Second, defendant's counsel and counsel for codefendant at trial cross-examined the witnesses regarding the methods used by police in compiling and showing the photographic arrays. They highlighted that many of the eyewitnesses had consumed alcohol, the outside lighting and visibility at the time of the events complained of, the duration of the events, the stressful nature of the experience, the emotional trauma that ensued, the physical distance of certain witnesses from the alleged perpetrators and their prior lack of familiarity with the individuals identified. Testimony was elicited from police at the scene regarding the level of emotional trauma experienced by the eyewitnesses and the lack of specificity regarding the provision of facial descriptions of the perpetrators, as well as the discrepancies in the testimony regarding the descriptions and which perpetrator discharged the weapon. Arguably, such testimony addressing the actual conditions confronted and the distinctions in the descriptions had a more significant and meaningful effect on the jury than the mere presentation of generalizations by an expert of factors that could impact the reliability of the witnesses' identifications.

At the evidentiary hearing, an expert attorney appearing on defendant's behalf acknowledged the absence of case law to suggest that the failure to secure expert testimony on identification issues constitutes ineffective assistance of counsel. The expert witness did, however, reference *People v Smithers*, 212 F3d 306 (CA 6, 2000), where it was determined that the exclusion of an expert witness without first conducting an examination in accordance with *Daubert*[1] constituted error.[2] *Smithers* does not stand for the proposition that the failure to present expert testimony in identification cases rendered a trial counsel's performance to be deficient. In referencing this case, the expert witness did not address or acknowledge the recognition by the court in *Smithers* of a line of cases that specifically did not find the exclusion of expert testimony on identification issues to be an abuse of discretion and suggest an outcome contrary to defendant's contention. The *Smithers* Court noted:

> [T]he lesson from these cases is not that expert testimony on eyewitness identification is never appropriate; rather, the cases indicate that courts must consider whether the testimony would be helpful or confusing to the jury. The cases also discuss whether this type of testimony touched on the "ultimate issue" in the case and therefore usurped the jury's role; whether there was other evidence against the defendant; and whether the jury could more properly evaluate the

---

[1] *Daubert v Merrell Dow Pharmaceuticals*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

[2] "Although the decisions of lower federal courts are not binding precedents, federal decisions are often persuasive." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 715-716; 742 NW2d 399 (2007) (citation omitted).

reliability of eyewitness testimony through cross-examination. [*Smithers*, 212 F3d at 314 (citations omitted).]

Defendant has failed to overcome the strong presumption that trial counsel's decision not to call an expert was sound trial strategy. As recognized in *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999), a defendant is not denied the effective assistance of counsel where defense counsel failed to call an expert to testify to the weaknesses of eyewitness identification because it was reasonable to assume such testimony could have been negatively received as merely stating the obvious fact that memories and perceptions are sometimes inaccurate. Further, defense counsel sufficiently challenged the strength and reliability of the identification testimony through cross-examination. As such, defendant has also failed to demonstrate that he was deprived of a substantial defense by trial counsel's failure to call or consult with an eyewitness identification expert because even without the aid of such expert testimony, trial counsel was able to effectively cross-examine the various witnesses and uncover deficiencies and inconsistencies in the identification of defendant. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Further, the trial court's instructions to the jury encompassed many of the factors to be considered in evaluating the reliability of witness identifications and emphasized the existence of the issue at trial regarding identification. "[J]urors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Accordingly, defendant has failed to demonstrate that trial counsel's strategy was objectively unreasonable or that he was prejudiced by the absence of an expert on eyewitness identification.

In a somewhat related issue, defendant, in his Standard 4 brief, argues that counsel was ineffective in failing to request a proper jury instruction on eyewitness identification. But defendant does not indicate what instruction should have been requested that would have been more appropriate than the one given. Rather, defendant merely argues the claimed deficiencies of the instruction given. But those are points more appropriate to a closing argument than inclusion in a jury instruction.

Defendant further asserts he was denied the effective assistance of counsel based on the failure to sufficiently investigate Todd and Moseley as potential witnesses and the failure to secure photographs of defendant and Moseley taken closer to the time of the alleged events to demonstrate their physical similarity and to challenge defendant's identification by eyewitnesses.

Defendant's trial counsel acknowledged and demonstrated an awareness of Moseley. While Moseley was not a witness for defendant, evidence was admitted regarding his resemblance to defendant through photographs, a videotape of Moseley's police interview and comments by officers verifying his physical resemblance to defendant. The failure to present Moseley as a potential witness constituted sound trial strategy. As noted, Moseley's only inculpatory statement was made to another inmate under suspect conditions while in jail to address allegations by other prisoners that he was a "snitch." Although Moseley did contact police alleging his ability to provide information regarding the shooting, he did not implicate himself when interviewed by police. Given the context and circumstances, it cannot be shown that defendant's trial counsel was ineffective for failing to present this witness given the inherent issues of credibility and the inconsistency in Moseley's representations regarding his presence or involvement in the events and potential for impeachment.

The failure of defendant's trial counsel to secure a May 2011 photograph of Moseley for use at trial cannot be construed as ineffective assistance of counsel. First, defendant's trial counsel denied knowledge of the existence of the photograph, as did Derryck Thomas, the officer in charge of the case, who also subsequently interviewed Moseley. Second, while the photograph may be more representative of Moseley's appearance at the time of the events and subjectively interpreted as demonstrating a closer resemblance to defendant than the items admitted at trial, the jury had the opportunity to view Moseley in a photograph and videotape and compare him to the physical appearance of defendant at trial. While the referenced photograph might have provided additional evidence to support defendant's theory at trial, its absence did not deprive him of a substantial defense. Similarly, defendant contends counsel was ineffective for failing to present a friend's prom photograph depicting defendant's appearance on the date of the events to further demonstrate his hair length. Again, the existence of this photograph was not known at the time of trial and merely served as cumulative evidence given that a different prom photograph of defendant taken one or two weeks after the events in this case was admitted into evidence at trial to demonstrate his appearance and hair length. Defendant's position regarding the photographs would require this Court to consider the decision of counsel with the benefit of hindsight, which is not appropriate. *Unger*, 278 Mich App at 242-243. The evaluation of the performance of defense counsel is "from counsel's perspective at the time of the alleged error and in light of the circumstances." *People v Grant*, 470 Mich 477, 487; 684 NW2d 686 (2004).

Similarly, the decision to not present Todd as a witness on behalf of defendant comprised trial strategy. Although defendant's attorney acknowledged he did not personally interview Todd, he asserted conferring with codefendant's counsel and determining that he would not be a credible witness. Contrary to defendant's contention, codefendant's counsel did not deny the conversations with defense counsel occurred regarding Todd; merely that he could not recall the content of the conversations he had with defendant's counsel. There is also a question regarding the admissibility of Todd's testimony as hearsay. Specifically, the testimony would not fall within an exception to hearsay due to the failure to demonstrate the unavailability of the declarant, Moseley, under MRE 804(b)(3) or the catch-all exception of MRE 804(b)(7), based on the absence of "equivalent circumstantial guarantees of trustworthiness."

Finally, defendant challenges the trial court's rulings following the evidentiary hearing, suggesting it failed to properly recognize and delineate the differences between the claims of defendant and his codefendant Blevins. Although the trial court did focus primarily on Blevins in its rulings, it indicated that much of the same reasoning was applicable to the facts and arguments presented by defendant. In addition, the trial court did specifically address claims of error raised by defendant. The mere fact that the trial court elected not to engage in a repetitive analysis on similar contentions by defendant and codefendant does not indicate a failure to consider the discrepancies or dissimilarities in their arguments. Despite individual differences or nuances in argument, the primary issue was whether defense counsel was ineffective for failing to secure or use an expert witness in addressing the reliability of witness identifications. The trial court fully addressed this contention for both defendant and codefendant, despite the use of examples for codefendant Blevins. The trial court specifically addressed the assertions pertaining to Moseley, as a witness and the additional photograph, as well as Todd's viability as a witness.

Finally, defendant raises additional claims of ineffective assistance in his Standard 4 brief. First, he argues that counsel should have objected to various statements by the prosecutor during closing argument. There is no obligation for a prosecutor to use "the blandest possible terms" in closing argument. *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). We see nothing objectionable in the complained-of statements, so there was no basis for trial counsel to have objected.

Second, defendant complains of the lack of an objection during the testimony of Thomas. But it was during defense counsel's examination of Thomas. Counsel was apparently trying to establish that the police ignored another possible suspect. And as for the prosecutor's statements, he merely objected to some of the questioning, without elaboration. Once again, defendant does not point to anything that would establish ineffective assistance of counsel.

Defendant next contends that he is entitled to resentencing pursuant to MCL 769.25. The prosecution concurs.

"[F]undamental fairness would dictate that . . . defendant should be afforded review . . . as though the matter were fully preserved to prevent the dilution of the very . . . right solidified by the change in law." *People v Lonsby*, 268 Mich App 375, 395; 707 NW2d 610 (2005). This Court reviews de novo preserved issues of law. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

At sentencing, the recent United States Supreme Court decision in *Miller v Alabama*, ___ US ___; 132 S Ct 2455; 183 L Ed 2d 407 (2012), was recognized and discussed. At the time of sentencing, however, the Michigan Legislature had not yet enacted MCL 769.25. In recognition of *Miller*, the trial court did engage in a discussion regarding the various factors of youth identified in *Miller* in fashioning a sentence for defendant.

In recognition and response to the United States Supreme Court's decision in *Miller*, and following this Court's rulings in *People v Carp*, 298 Mich App 472; 828 NW2d 685 (2012), aff'd 496 Mich 440 (2014), and *People v Eliason*, 300 Mich App 293; 833 NW2d 357 (2013), the Michigan Legislature enacted MCL 769.25 and MCL 769.25a, which "significantly altered Michigan's sentencing scheme for juvenile offenders convicted of crimes that had previously carried a sentence of life without parole." *People v Carp*, 496 Mich 440, 456; 852 NW2d 801 (2014). The statutory enactments became effective on March 4, 2014. MCL 769.25a delineates the retroactive application of *Miller*, defining when "[a] case is final for purposes of appeal."

In the circumstances of this case, MCL 769.25 is applicable to defendant because he was under 18 years of age at the time he committed the offense of first-degree murder, was convicted "before the effective date of the amendatory act," the case was pending in the trial court on June 25, 2012, and the time period for appellate review had not expired. MCL 769.25(1)(b)(*ii*).

Although the prosecutor concurs that resentencing is mandated, the prosecution suggests that the matter should be remanded to the trial court to afford the prosecutor the opportunity to file a motion to seek the imposition of a sentence of life without parole. Defendant, on the other hand, argues that he is entitled to a resentencing for a term of years in accordance with MCL 769.25(4), (9) based on the failure of the prosecutor to file a motion to seek a life sentence

without parole "within 90 days after the effective date of the amendatory act. . . ." MCL 769.25(3).

The circumstances of this case are unique. Defendant is correct that the prosecutor did not file a motion seeking imposition of a sentence of life without parole "within 90 days after the effective date of the amendatory act" as required by MCL 769.25(3). Rather, at sentencing, the prosecutor argued for the imposition of a life sentence without parole eligibility for defendant with citation to specific reasons for the requested sentence. Despite the fact that MCL 769.25 was not in effect at the time of defendant's sentencing on March 21, 2013, the trial court did undertake an analysis consistent with the requirements delineated in MCL 769.25(6) and (7). The trial court reviewed various life circumstances and factors specific to defendant and sentenced defendant to life with parole eligibility premised, in part, on the choices available to the trial court at the time of sentencing as identified and limited in *Carp*, 298 Mich App at 531-534, to life without parole or life with parole eligibility. In rejecting the prosecutor's request for parole ineligibility, the trial court noted, however:

> In this particular case the OV maximum score is 100 points. In this particular case the OV score is 200 points double the absolute maximum in this particular matter.
>
> In this particular matter it was purely fortuitious [sic] that we didn't have a more severe consequence in this particular matter. But I think that the double of the Offense Variables score in this case clearly justifies going outside the guidelines in this matter.

Because the trial court rejected the prosecutor's request for a sentence of life without parole, defendant contends he is entitled to be resentenced to a term of years sentence; the only other option available under the statutory language. We do not agree. Based on the limited sentencing options available to the trial court at the time, coupled with the trial court's indication that the case justified the imposition of a sentence outside the applicable guidelines, it cannot be determined that the trial court would have sentenced defendant to a term of years had that option been available. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Resentencing is also not required where the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error and the sentence falls within the appropriate guidelines range."). This is particularly evident given the incongruous result that would occur if the trial court elects to resentence defendant to a term of years for the first-degree murder conviction in accordance with MCL 769.25(9), which would be significantly less than his sentences for the AWIM convictions. We, therefore, remand this matter to the trial court for resentencing of defendant either to life in prison without parole eligibility or a term of years as specified in MCL 769.25(9).

We affirm defendant's convictions, vacate his sentence and remand to the trial court for resentencing in accordance with MCL 769.25. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello