# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GARY TREMAYNE HOLLINS,

Defendant-Appellant.

UNPUBLISHED
November 20, 2018

No. 338452
Oakland Circuit Court
LC No. 2017-261673-FC

Before: M. J. KELLY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(b) (victim between 13 and 16 years of age and related). He was sentenced as a fourth habitual offender, MCL 769.13, to 35 to 60 years in prison for each conviction, to be served concurrently. Defendant appeals by right. We affirm.

At trial, testimony established that defendant had sexual intercourse with his former stepdaughter on multiple occasions in 2008, before she turned 15 years old. Defendant denied the allegations. Although the complainant reported the abuse to the police in 2009, the investigation languished until 2016.

On appeal, defendant first argues that his due process rights were violated by prearrest delay and the lack of a speedy trial. Although defendant argued below that the prosecutor violated the 180-day rule, a claim he does not assert on appeal, he did not make any argument based on pre-arrest delay or his constitutional right to a speedy trial. Unpreserved issues, including those of a constitutional nature, are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The right to a speedy trial guaranteed by the Sixth Amendment[1] does not apply to delay occurring before an arrest or initiation of a formal criminal charge. *United States v Marion,* 404

---

[1] US Const, Am VI.

-1-

US 307, 320; 92 S Ct 455; 30 L Ed 2d 468 (1971). But the Due Process Clause[2] does play a limited role in preventing unjustified preindictment or prearrest delay. *People v White*, 208 Mich App 126, 134; 527 NW2d 34 (1994), citing *Marion,* 404 US at 324-326, and *United States v Lovasco,* 431 US 783, 789; 97 S Ct 2044; 52 L Ed 2d 752 (1977). "A prearrest delay that causes substantial prejudice to a defendant's right to a fair trial and that was used to gain tactical advantage violates the constitutional right to due process." *People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014), citing *Marion,* 404 US at 324.

Defendant argues that his due process rights were violated by the eight-year delay between the activity in 2008 that led to his conviction and his arrest. The case was assigned to Detective Kenneth Alderman in 2009. At that time, the complainant had examinations at a sexual assault center and by a gynecologist. Alderman said that he spoke with the complainant and her mother, attended the interview of the complainant, and periodically called defendant, who was in Missouri, to request that he present himself for an interview. The complainant and her mother testified that they checked with Alderman and the police periodically in 2009 and 2010, but gave up in 2011 when Alderman told them that nothing could be done because defendant was in another state and the prosecutor had declined to press charges. However, the prosecutor had not received information about the case, and Alderman left the case open pending an interview with defendant.

The complainant reported the abuse to the police again in 2016. Sergeant Dale Brown then investigated the case, including flying to Missouri to interview defendant. This investigation led to defendant's indictment.

Because there is no constitutional right to be arrested, a delay between when the crime was committed and arrest is not a denial of due process unless there is record evidence of prejudice resulting from the delay that violates a defendant's right to procedural due process. *People v Anderson*, 88 Mich App 513, 515; 276 NW2d 924 (1979). A defendant must demonstrate "actual and substantial prejudice to his right to a fair trial" in order to establish a due process violation because of preindictment delay. *People v Musser*, 259 Mich App 215, 220; 673 NW2d 800 (2003). Substantial prejudice is an interference of the defendant's opportunity to defend against the charges to the extent that it likely affected the outcome of the trial. *People v Patton*, 285 Mich App 229, 237; 775 NW2d 610 (2009).

Defendant asserts that the long delay before he was charged prejudiced him by making it "impossible for [him] to prepare a meaningful defense." But defendant makes no further argument and offers no evidence to establish how the delay made it impossible to prepare a defense or how it affected the outcome of the trial. General allegations or speculative claims of missing witnesses or other lost evidence do not establish actual prejudice. See *People v Cain*, 238 Mich App 95, 109-110; 605 NW2d 28 (1999). "A defendant cannot merely speculate generally that any delay resulted in lost memories, witnesses, and evidence." *Woolfolk*, 304 Mich App at 454. Additionally, a general claim that the memories of witnesses have suffered is insufficient to demonstrate actual and substantial prejudice. *Musser*, 259 Mich App at 220.

---

[2] US Const, Am XIV, § 1.

Defendant has not demonstrated that the lengthy delay caused him prejudice. Further, it is possible that the delay benefitted defendant because his defense was a denial that he had ever been inappropriate with the complainant, which did not require reliance on memories, whereas the testimony of the complainant and her supporting witnesses relied on specific memories that could have eroded over time.

Further, to determine if due process were violated, the Court must balance the actual prejudice to the defendant against the state's reasons for the delay. The defendant bears the initial burden to demonstrate that prejudice resulted from the delay before the burden then shifts to the prosecutor to explain the delay. *Cain*, 238 Mich App at 108. In this case, defendant has not demonstrated that he was prejudiced by the long delay; consequently, the prosecutor was not charged with providing a reason for the delay. Moreover, when looking to the prosecution's explanation for the delay, a court should consider whether the delay was deliberate and whether undue prejudice resulted. *People v Herndon*, 246 Mich App 371, 390; 633 NW2d 376 (2001). In this case, there was no showing that the delay was not knowingly deliberate or strategic; it appears to have been the result of negligence. Moreover, except to the extent that Alderman's negligence can be attributed to the prosecutor, there was no evidence demonstrating that the prosecutor delayed charging defendant to his detriment in order to gain an advantage in prosecuting him. Thus, defendant's due process rights were not violated by the delay before his arrest.

As for post-arrest delay, a guarantee of the right to a speedy criminal trial is found in both the United States Constitution and the Michigan Constitution, and in Michigan it is enforced by "statute and by court rule." US Const., Am VI; Const. 1963, art 1, § 20; MCL 768.1; MCR 6.004(A); *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). A guarantee of a speedy trial "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v MacDonald*, 456 US 1, 8; 102 S Ct 1497; 71 L Ed 2d 696 (1982). To determine whether a defendant has been denied the right to a speedy trial, the Court balances the following four *Barker*[3] factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262; see also *Cain*, 238 Mich App at 112.

"The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261. A delay in excess of 18 months raises a presumption a defendant is prejudiced and "the burden shifts to the prosecution to show that there was no injury." *Id.* at 262. Presumptively prejudicial delay triggers " 'an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial.' " *Id.* (citations omitted). In this case, defendant was reportedly arrested on August 1, 2016 and his trial began on March 27, 2017, a delay that the parties agree was roughly eight months. Thus, a presumption of prejudice

---

[3] *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

did not arise. Additionally, after defendant's objection, the trial court held that the prosecutor had complied with the 180-day rule under the Interstate Agreement on Detainers (IAD), MCL 780.601.[4] Defendant does not contend that this holding was in error. Rather, he avers that the delay was unreasonable considering the extensive prearrest delay; however, the speedy trial guarantee begins at the time of the defendant's arrest. *Williams*, 475 Mich at 261. The time between defendant's arrest and the beginning of his trial is not excessive.

Further, part of the delay between defendant's arrest and trial was caused by extraditing defendant from Missouri. Defendant stated that he was arrested on August 1, 2016. The IAD filing indicates that the prosecutor informed Missouri of defendant's charges on September 21, 2016, and requested that Missouri authorities inform defendant. Defendant also brought a motion to change venue in March 2017. Considering the procedural requirements involved in extraditing defendant and holding the preliminary hearing, we find the eight-month period between arrest and trial was reasonable.

Next, defendant did not assert his right to a speedy trial based on the 180-day rule having been violated until his March 20, 2017 motion to dismiss, which was argued on the first day of trial one week later. Thus, this factor balances in favor of the prosecution.

The fourth element, prejudice, is critical to the analysis of whether defendant's speedy trial rights were abridged. *Cain*, 238 Mich App at 112. "A delay that is under eighteen months requires a defendant to prove that the defendant suffered prejudice." *Id*. Defendant states that he suffered prejudice because he was not able to serve his maximum 10-year Missouri sentence concurrently with his sentence in this case. Defendant's sentence, however, is 35 to 60 years and because it is not clear that defendant will be released after serving just his minimum, it is not clear that serving the sentences concurrently for a few months sooner would have resulted in defendant's gaining his freedom anytime sooner. Moreover, at sentencing defendant was credited with 183 days that he was serving while awaiting trial. Thus, the period at issue is two months, not eight months.

In sum, the four factors each weigh in favor of the prosecutor. Thus, defendant has not demonstrated that the length of time between his arrest and trial violated his rights, or that it resulted in plain error.

Next, defendant argues that the trial court erred in admitting evidence that defendant was in a correctional facility at the time of his arrest. Whether this bad acts evidence was properly admitted is reviewed for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595(2005).

---

[4] Forty-eight states have agreed to the IAD, which facilitates the prompt disposition of outstanding charges against an inmate incarcerated in another jurisdiction, requiring a prisoner be informed of a detainer against him and the right to "make a request for final disposition of the indictment," which triggers the 180-day rule. See *Patton*, 285 Mich App at 231-233.

Evidence of prior bad acts or crimes by a defendant is generally excluded except as allowed by MRE 404(b) to avoid the danger of a conviction based on a defendant's history of other misconduct. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 725 (2005). Generally, to be admissible under MRE 404(b), bad acts evidence (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have its probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). The may provide a limiting instruction under MRE 105. *Id*. A proper purpose is one other than establishing the defendant's character to show his propensity to commit the crime. *Johnigan*, 265 Mich App at 465.

In this case, the prosecutor asked Sergeant Brown whether he was able to locate defendant in Missouri in order to travel to interview him. Brown responded, "We did. We were able to locate him. And he was, at the time, incarcerated at the Moberly Correctional facility." At this point, Brown was interrupted by defendant's objection that the evidence was irrelevant. The prosecutor commented that he thought the evidence was "somewhat relevant" to defendant's opening statement but that he would "move on." The trial court stated, "Okay. Thank you."

Defendant argues that the evidence was irrelevant and unfairly prejudicial. Because the evidence was not solicited by a question about defendant's location or criminal history but was in response to whether Brown had located defendant in order to speak with him, Brown's answer was unresponsive to the question.

Plaintiff argues that the evidence was relevant because defendant argued in his opening statement that he had been living in Missouri with his new wife for seven years trying to do the best he could to raise his family when he was contacted by the prosecutor with regard to issues that he thought had been investigated and resolved. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). During the trial, evidence was admitted that defendant had been living in Missouri. But neither defendant's opening statement nor properly admitted evidence that defendant was located in Missouri "opened the door" to demonstrating that defendant was housed in a correctional facility in Missouri. *People v Figgures*, 451 Mich 390, 399-400; 547 NW2d 673 (1996) (citation omitted). That defendant was incarcerated in Missouri in 2016 was not probative of any facts at issue on trial for charges that he had molested his stepdaughter in 2008. Defendant's leaving Michigan to live in Missouri in 2009 may have been relevant to why the case was not prosecuted sooner, but his incarceration in Missouri did not pertain to the CSC accusations.

Further, the evidence should have been excluded because its minimal probative value was substantially outweighed by the danger of unfair prejudice. Even if relevant, evidence may be excluded under if " 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *People v Watkins*, 491 Mich 450, 477, 481; 818 NW2d 296 (2012), citing MRE 403. Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight or will allow the jury to draw an improper inference. *McGhee*, 268 Mich App at 614. In this case, the danger that

the jury might infer that defendant had a character to commit crimes or that a conviction would not change his life substantially because he was already imprisoned were sufficient to exclude the evidence, particularly considering that its only probative value was to further establish that defendant had been living in Missouri. Thus, evidence that defendant was in a correctional facility in Missouri at the time that he was arrested should not have been admitted. But unresponsive testimony by a prosecution witness, although error, is not necessarily grounds for reversal. *People v Barker*, 161 Mich App 296, 306; 409 NW2d 813 (1987).

An evidentiary error does not merit reversal in a criminal case unless, after review of the case, it appears that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). If a witness makes a mistake in giving an unresponsive answer, "the case must be a very peculiar and very strong one" to justify a reversal. *People v Podsiad*, 295 Mich 541, 544; 295 NW 257 (1940). In this case, Brown's statement was unresponsive, and the prosecutor did not argue it in closing. It is not likely that the error was outcome determinative because defendant's conviction rested on the testimony of the complainant, which detailed defendant's abuse in 2008 and testimony supporting the allegations of abuse from the complainant's mother and the complainant's close friend at the time. The testimony of defendant's 2016 incarceration did not detract from or bolster the credibility of the witnesses who provided the testimony upon which defendant's convictions were based. Thus, it is not probable that defendant was convicted of the 2008 sexual assaults based on his 2016 imprisonment; therefore, this error does not require reversal.

Next, although defendant argues that the trial court erred by admitting evidence from the complainant's medical records through two lay witnesses, he expressly agreed to their admission. During the trial, the prosecutor moved for admission of the complainant's five-page medical record, noting that the record contained a certification and that defendant had been notified under MRE 902(11) of the prosecutor's intent to seek its admission. Defendant's trial counsel remarked, "No objection, your honor." Once the jury was seated, the prosecutor moved to admit the medical record, and defendant's trial counsel again remarked, "No objection, your honor." A waiver is the intentional relinquishment of a known right, and it extinguishes any error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). A counsel's statement of "no objection" is not distinguishable from declaring, "I approve," and constitutes a waiver of objection. *Id*. at 504-505. Defendant may not benefit from an alleged error that he contributed to by plan or through negligence. *People v Witherspoon*, 257 Mich App 329, 333; 670 NW2d 434 (2003). Thus, this Court cannot find error requiring reversal based on the admission of the complainant's medical record.

The next question is whether statements from the lay witnesses regarding the content of the medical record were admissible. The complainant's mother testified that the gynecological examination revealed that the complainant's hymen was torn. Sergeant Brown testified that he obtained the record from the gynecologist, and it indicated that the complainant's hymenal ring was consistent with penetration. Defendant argues that his constitutional right to confront the witnesses against him was violated because he was not able to cross-examine the author of the report. See US Const, Am VI; Const 1963, art 1, § 20. The central protection offered by the Confrontation Clause of the Sixth Amendment is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. *People v Green*, 322 Mich App 676, 390; 913 NW2d 385 (2018).

In *Crawford v Washington,* 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the United States Supreme Court held that the Confrontation Clause prohibits the admission of testimonial hearsay against a criminal defendant unless the declarant was unavailable and the defendant had a prior opportunity to cross-examine the declarant. See *People v Jordan*, 275 Mich App 659, 662; 739 NW2d 706 (2007). Testimonial hearsay includes "pretrial statements that the declarant would reasonably expect to be used in a prosecutorial manner," *People v Lonsby*, 268 Mich App 375, 377; 707 NW2d 610 (2005), and if the statement was made " 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Crawford*, 541 US at 52 (citation omitted). In this case, because the police referred complainant for medical evaluation after her complaint that she had been sexually assaulted, it was evident that those involved would conclude that the evidence from the examination would be used in a trial regarding alleged sexual abuse. Thus, the statements from the complainant's mother and Brown were testimonial hearsay protected by the confrontation clause, and defendant would have had the right to examine the author of the medical report. However, counsel may waive the right to confrontation. *People v Buie*, 491 Mich 294, 306; 817 NW2d 33 (2012). In this case, defendant consented to admission of the report containing the objectionable testimony, relieving the prosecutor from calling its author as a witness to authenticate the report. In *People v Childs*, 491 Mich 906; 810 NW2d 563 (2012), the Court vacated the part of this Court's opinion holding that admission of an autopsy report did not violate the defendant's right to confrontation because the Court concluded that the autopsy report was prepared in anticipation of litigation. But the Court affirmed the defendant's conviction because he had stipulated to admission of the autopsy report and admission of the report was not outcome determinative. *Id*. In both *Lonsby*, 268 Mich App at 398, and *People v Payne*, 285 Mich App 181, 199-200; 774 NW2d 714 (2009), the Court found that admission of evidence, without objection, that violated the Confrontation Clause was plain error affecting the defendant's substantial rights because the prosecutor relied on the reports and there was not sufficient independent evidence of defendant's guilt. But in this case the evidence that determined defendant's guilt was the complainant's testimony detailing the abuse and the supporting testimony of the complainant's mother and the complainant's friend. Preserved constitutional error does not warrant reversal if the error is harmless beyond a reasonable doubt. *Carines*, 460 Mich at 774. Additionally, as an unpreserved issue, defendant cannot demonstrate that testimony based on a report that he did not object to, in a trial where the complainant described the details of the crimes and other testimony supported her account, denied him a fair trial or was the basis for his conviction.

Defendant argues that his trial counsel provided ineffective assistance by failing to object to the testimony of Sergeant Brown and the complainant's mother that was based on the medical report. He did not raise this issue below. Claims of ineffective assistance of counsel that are unpreserved are limited to review for errors apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel is reviewed de novo. *Id.* at 242.

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance (1) fell below an objective standard of professional reasonableness, and (2) that it is reasonably probable that, but for counsel's ineffective assistance, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667. The effective assistance

of counsel is presumed, and the defendant bears the heavy burden of proving otherwise. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Defendant argues that his trial counsel's performance was deficient for failing to object to the admission of the medical records. But the medical records were certified and were likely routinely kept in the course of the medical practice. Thus, the medical record would have been admissible under MRE 803(6) as the record of regularly conducted activity, an exception to the hearsay rule. Because the records would have been admissible under MRE 803(6), they could be self-authenticating under MRE 902(11) if "accompanied by a written declaration under oath by its custodian" certifying that the records were "made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;" they were "kept in the course of the regularly conducted business activity;" and "[i]t was the regular practice of the business activity to make the record." Counsel failing to raise a futile objection is not ineffective assistance of counsel. *Unger*, 278 Mich App at 256-257.

Additionally, defendant argues that his trial counsel's performance was deficient in failing to object that the testimony about the medical report violated his right to confront the author of the report. An objection may have been meritorious but the report was admissible and the testimony was cumulative to what the jury would have read in the report. Further, it is possible that declining to raise an objection was trial strategy, employed to avoid having the prosecutor present the testimony of the physician regarding the medical impact of the abuse. Declining to raise objections can often be consistent with sound trial strategy, which this Court will not second-guess with the benefit of hindsight. *Id*. at 242-243, 253.

Lastly, defendant argues that the trial court erred by denying his motion to correct the presentence investigation report (PSIR). In this case, defendant challenged the statement in the PSIR describing the complainant's interview at a sexual assault services center where she was describing the sexual behavior of defendant toward her and stated, "She was asked when the first time was and indicated it was around March of 2006. [She] used the fact they moved in January of 2006 to establish her timeline. It should be noted that during the exam in District Court in 2017 the dates were amended to December 2006-Decemeber 2008 and that the victim stated that she believed the sexual acts began when she was closer to the age of 14." Defendant argues that he was charged for acts of penetration that occurred in 2008, and references to behavior before this time were inaccurate. But trial testimony supports the statements in the PSIR that defendant's sexual behavior with the victim began in 2006. She turned 13 years old in December 2006. At trial, she said that defendant began acting inappropriately with her when she was "13 going on 14" years old and that the touching started, including grazing her breast. She recalled that when she was 14 years old defendant would lie next to her in her bed with increasing frequency, which led to defendant's touching her breasts and vagina over and under her clothing, and that this happened a few times. She believed that sexual penetration began in the summer of 2008 before she turned 15 years old.

The trial court did not explicitly state whether it accepted this information or disregarded it as irrelevant. It said that it was "leaving it" in the PSIR after the prosecutor argued that the complainant had described sexual acts occurring during the time frame when she was 13 years old. Because the complainant was not asked at trial how soon after she turned 13 the sexualized touching began, and the sexual assault assessment report that the PSIR was referencing was not

included in the record, it is not determined whether there was sexual contact in 2006. But because the complainant testified that she was 13 years old when the touching began, and she was 13 in December 2006, the trial court did not abuse its discretion in denying defendant's request to amend the PSIR.

Further, defendant was only charged with acts of penetration that occurred in 2008. Thus, any inaccuracy in the date that inappropriate touching began did not affect defendant's sentencing. Where the alleged inaccuracies in the PSIR would have no effect on the sentence, any failure to address their accuracy is considered harmless error. *People v Daniels*, 192 Mich App 658, 675; 482 NW2d 176 (1991).

We affirm.

/s/ Michael J. Kelly
/s/ David H. Sawyer
/s/ Jane E. Markey